

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MARY ELIZABETH SCHIPKE, §
 §
       Petitioner, §
 §
VS. § NO. 4:08-CV-228-A
 §
ELAINE CHAPMAN, §
WARDEN, FEDERAL MEDICAL §
CENTER--CARSWELL, §
 §
       Respondent. §

MEMORANDUM OPINION
and
ORDER

    Came on for consideration the document filed by petitioner, Mary Elizabeth Schipke ("Schipke"), titled, "Petition for Writ of Habeas Corpus--§2241 and Demand for Injunctive Relief." On April 29, 2008, respondent, Elaine Chapman, Warden, Federal Medical Center--Carswell (hereinafter, "Warden"), filed a response to Schipke's petition. Having considered the petition, the response, the record, and applicable authorities, the court concludes that Schipke's claims pursuant to 28 U.S.C. § 2241 should be denied, her claims relating to the extraction of DNA, an orthopedic mattress, extra clothing to keep warm, and a special medical diet should be dismissed for failure to state a claim upon which relief can be granted, and all other claims and causes of action asserted by Schipke should be dismissed for Schipke's failure to exhaust her administrative remedies.

I.

## Schipke's Petition

The court is put to the task of characterizing Schipke's claims. Schipke "cannot avail [her]self of the writ of habeas corpus when seeking injunctive relief unrelated to the cause of [her] detention." Rourke v. Thompson, 11 F.3d 47, 49 (5th Cir. 1993). The instant petition does not represent the first time that Schipke has filed an action, asserting many and various claims. In one of her prior actions, the United Sates Court of Appeals for the Fifth Circuit noted that "[a]llegations that challenge the fact or duration of confinement are properly brought in habeas petitions, while allegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions." Schipke v. Van Buren, 239 F.App'x 85, 85-86 (5th Cir. 2007) (not for publication) (citing Spina v. Aaron, 821 F.2d 1126, 1127-28 (5th Cir. 1987); Cook v. Tex. Dep't of Criminal Justice Transitional Planning Dep't, 37 F.3d 166, 168 (5th Cir. 1994)).

Schipke seems to classify her claims in three categories, based on the relief she seeks. First, she requests "an immediate injunction against FMC-Carswell permanently halting any forced or coerced DNA extraction and any prison sanctions for exercising her First Amendment rights to DNA exception." Pet. at 8. Second, she seeks an injunction "against . . . denying her special medical diet, special medical housing, and other disability and medical needs." Id. Third, she seeks an

2

immediate release from FMC-Carswell and immediate placement in a halfway house located in Tucson, Arizona. Schipke's first two categories of claims appear to be civil rights claims, as they challenge the rules, customs, and procedures affecting conditions of confinement. Her last category of complaints, through which she seeks release from custody, appears to be the only category properly raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The court will consider Schipke's claims accordingly.[1]

## II.

## Analysis

A. <u>DNA Extraction.</u>

"The Director of the Bureau of Prisons shall collect a DNA sample from each individual in the custody of the Bureau of Prisons who is, or has been, convicted of a qualifying Federal offense . . . ." 42 U.S.C. § 14135a(a)(1)(B). In response to efforts by the Federal Bureau of Prisons to collect Schipke's DNA, she claims "First Amendment religious exemption rights," arguing that she is "legally requesting a religious/Spiritual exemption to DNA extraction." Pet. at 3. Though she does not say specifically, Schipke's argument appears to be that the collection of DNA improperly interferes with the free exercise of

---

[1] Warden, in her response, takes the position that the court must deny all of Schipke's requests for relief. As a prisoner seeking redress from government officials, Schipke's complaint is subject to preliminary screening under 28 U.S.C. § 1915A. See <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998). Section 1915A(b)(1) provides for <u>sua sponte</u> dismissal if the court finds that the complaint is either frivolous or fails to state a claim upon which relief may be granted.

3

her religion.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. As a threshold matter, the court notes that "[t]here is no doubt that only beliefs rooted in religion are protected by the Free Exercise Clause . . . . Purely secular views do not suffice." Frazee v. Illinois Dep't of Employment Sec., 489 U.S. 829, 833 (1989) (quotation and citation omitted). As Warden points out, "Schipke's pleading does not identify her religious beliefs. Nor does she explain how giving a DNA sample violates those beliefs." Resp. at 13. Attached to the petition, as "Exhibit F," however, is a letter written by Schipke to "Prison Outreach International," which purports to set forth Schipke's beliefs. Warden notes that it is possible to read Schipke's letter in one of two ways: (1) either it is "a self-serving, insincere effort to try to bolster her contention that this is a religious objection to providing a DNA sample" or (2) "it does represent her sincere beliefs, however illogical, inconsistent, and incomprehensive it [sic] may appear to others." Resp. at 14. With some reservation, the court will resolve the matter in Schipke's favor.[2]

---

[2]The court does so in part because "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." Thomas v. Review Bd. of Indiana Employment Sec. Division, 450 U.S. 707, 714 (1981). Mere personal preferences do not merit First Amendment protection, and "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which
(continued...)

4

The court considers Schipke's DNA extraction claim under the rubric of the Religious Freedom Restoration Act ("RFRA"). See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 424 (2006). To be entitled to relief, Schipke would have to establish first that DNA extraction and collection substantially burdens the exercise of her religion. See 42 U.S.C. § 2000bb-1. Schipke does not allege that the exercise of her religion is burdened by any particular process by which DNA is collected. Indeed, evidence submitted by Warden indicates that Schipke does not have a problem giving samples of blood.[3] Rather, as Schipke explains:

> My sincerely held religious/Spiritual beliefs and convictions believe it to be a <u>gross</u> transgression of Divine Law (as well as the desecration of my Holy Living Temple), to submit <u>any</u> portion of my body for DNA removal. Once removed from my body, my DNA . . . will be used for profiling purposes, chemical dissection and experimentation, and other <u>unholy</u> purposes. I cannot and will not allow this evil upon my Holy Body. Samples of DNA are imprisoned in the CODIS (Combined DNA Index System) where they are stored electronically. It is well known that accessed data is routinely abused by the government and by corporations. The genetic information in DNA is a Holy Mystery which must be protected at all costs!

Ex. F to Pet. at 1. Schipke objects broadly to any collection of DNA based on the alleged use to which the government puts the DNA

---

[2](...continued)
society as a whole has important interests." <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 215-16 (1972). The court has a strong suspicion that Schipke has merely used religious buzzwords to couch her personal preference against providing DNA as a sincerely held religious belief. In the interest of expeditiously resolving this matter, however, the court chooses to assume that Schipke sincerely holds the religious beliefs she claims to hold.

[3]Schipke has given blood for medical testing ten times since May 18, 2006, and as recently as July 27, 2007.

5

information once it is collected. Such an objection does not rise to the level of substantial burden on the exercise of religion.

The Supreme Court's decision in Bowen v. Roy, 476 U.S. 693 (1986), is instructive on this point. In Roy, the Supreme Court considered a challenge to a federal statute that required the states to use social security numbers in administering certain welfare programs. Two applicants for benefits under these programs contended that their religious beliefs prevented them from acceding to the use of a social security number for their two-year-old daughter because the use of a numerical identifier would "'rob the spirit' of [their] daughter and prevent her from attaining greater spiritual power." Id. at 696.

Rejecting the challenge, the Court noted that:

> Never to our knowledge has the Court interpreted the First Amendment to require the Government itself to behave in ways that the individual believes will further his or her spiritual development or that of his or her family. The Free Exercise Clause simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particular citizens. Just as the Government may not insist that appellees engage in any set form of religious observance, so appellees may not demand that the Government join in their chosen religious practices by refraining from using a number to identify their daughter.

Id. at 699-700. In the instant action, Schipke attempts to cause the government to cease collecting and cataloging DNA because such processes allegedly do not comport with her religious beliefs. Such a demand for control over the government's internal affairs is not cognizable under the Free Exercise

Clause. See id.; Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 451 (U.S. 1988) ("Whatever may be the exact line between unconstitutional prohibitions on the free exercise of religion and the legitimate conduct by government of its own affairs, the location of the line cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development."); Sherbert v. Verner, 374 U.S. 398, 412 (1963) (Douglas, J., concurring) ("[T]he Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can extract from the government.").

Schipke is entitled to no relief based on her complaints relating to the collection of DNA because she has failed to state a cognizable First Amendment claim.

B. Schipke's Other Claims.

1. Claims Properly Raised Pursuant to 28 U.S.C. § 2241.

Schipke argues that she is entitled to seventy-seven days of good conduct time she lost in a disciplinary proceeding and that she should be granted pre-release placement in a halfway house. These are the only claims in her petition that could have been properly raised in a petition for writ of habeas corpus. For the reasons discussed by Warden in her response with respect to Schipke's § 2241 claims, she is not entitled to any relief thereon.

2. Civil Rights Claims.

Likewise, Schipke is not entitled to any relief on any of

her other claims. A federal prisoner must exhaust available administrative remedies before seeking purely injunctive relief. See Rourke v. Thompson, 11 F.3d 47, 49 (5th Cir. 1993). "Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exceptions to the exhaustion requirement apply only in extraordinary circumstances, which Schipke bears the burden of establishing. See id. Schipke complains that she has been denied a special medical diet, special medical housing, and other disability and medical needs. The court agrees with Warden that most of Schipke's claims are not legitimate causes of action, and to the extent they are legitimate causes of action, with the limited exceptions discussed below, Schipke has failed to exhaust her administrative remedies or establish extraordinary circumstances as would warrant an exception to the exhaustion requirement.

Warden concedes that Schipke has exhausted her administrative remedies with respect to her requests for an orthopedic mattress, extra clothing to keep warm, and a special medical diet. Schipke characterizes her complaints relating to these and other requests as denial of her "special medical diet, special medical housing, and other disability and medical needs." Pet. at 8; see also id. at 7 ("SCHIPKE'S medical conditions

8

continue to <u>worsen</u> because of the deliberate indifference by prison staff to her serious medical needs.").

The court concludes Schipke has failed to state a claim with respect to her requests. She has pleaded her claims only in a conclusory fashion, without having identified any person, any action, or any omission as would support a claim for deliberate indifference to serious medical needs under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennan, 511 U.S. 825, 847 (1994) (holding that a prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."). In fact, Warden has submitted strong evidence that tends to prove that Schipke likely could not establish deliberate indifference. An administrative remedy appeal response relating to Schipke's requests states:

> Relevant portions of your medical record have been reviewed which reveal you have been diagnosed with Hashimoto's thyroiditis, fibromyalgia, irritable bowel syndrome, arthritis of the cervical spine, and a history of chemical sensitivity. On August 9, 2006, the Medical Review Committee carefully reviewed your medical record and determined your current medical condition did not warrant any of the items you have requested. On August 22, 2006, you were assessed by the physical therapy department who recommended therapeutic exercises and functional training to help with your fibromyalgia symptoms. The record reflects you are receiving medical care and treatment in accordance with the Bureau of Prisons' policy.

Resp't's App., Vol. I, at 147. Schipke has alleged nothing as would cause the court to question Warden's conclusion that she is

in fact receiving adequate medical care and treatment.

This action, and its predecessors,[4] make abundantly clear that Schipke disagrees with the medical treatment she has received. However, "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

III.

Order

For the reasons discussed herein, Schipke is not entitled to any relief on any of her claims. Therefore,

The court ORDERS that Schipke's claims pursuant to 28 U.S.C. § 2241 be, and are hereby, denied; her claims relating to the extraction of DNA, an orthopedic mattress, extra clothing to keep warm, and a special medical diet be, and are hereby, dismissed for failure to state a claim upon which relief can be granted; and all other claims and causes of action asserted by Schipke be, and are hereby, dismissed for Schipke's failure to exhaust her administrative remedies.

SIGNED May 19, 2008.

JOHN McBRYDE
United States District Judge

---

[4]This action is, at least, the sixth that has been filed by Schipke since she has been incarcerated.

10